**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**CHRISTOPHER FRASER,**
*individually and on behalf of others
similarly situated,*

                               **Plaintiffs,**                  **REPORT AND
                                                                 RECOMMENDATION**

                         -against-                                   **12-CV-5883 (NGG)**

**ACCESS GROUP, INC., et al.,**

                                 **Defendants.**
------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

        This putative class action, brought by Christopher Fraser ("Fraser" or "plaintiff"), concerns a dispute over whether a repayment plan offered by Fraser's student loan servicers -- identified in the Complaint as defendants Access Group, Inc. ("Access") and Affiliated Computer Services, Inc. ("ACS") -- violates the terms of the promissory notes that secure plaintiff's debt. See generally Complaint (Nov. 28, 2012) ("Compl."), attached to Notice of Removal, Electronic Case Filing ("ECF") Docket Entry ("DE") #1. The Complaint, which was filed by plaintiff on or about October 1, 2012, in New York State Supreme Court, Kings County, contains three claims, all under state law, alleging breach of contract, unjust enrichment, and deceptive and misleading business practices in violation of section 349 of the New York General Business Law. See Compl. ¶¶ 59-90. Defendant Xerox Corporation ("Xerox") and non-party Xerox Education Services, Inc. ("XES") -- a company not named in the Complaint -- seek to remove plaintiff's action to this federal court, purporting also to remove on behalf of Access. See Notice of Removal (Nov. 28, 2012), DE #1; Amended Notice of Removal (Nov. 30, 2012),

DE #2.

For the reasons that follow, this Court respectfully recommends that the District Court grant plaintiff's request to remand the case to state court.

## FACTUAL BACKGROUND

On or about June 20, 2007, Fraser executed two master promissory notes (the "Promissory Notes") in favor of Access, in order to obtain from Access federally guaranteed student loans, administered under the Federal Family Education Loan Program ("FFELP"), to finance his first year of law school. See Compl. ¶¶ 2, 4. The Complaint asserts that, on or about July 14, 2011, after he had graduated from law school and entered into the repayment period on the loans, plaintiff applied to enroll in a repayment plan, titled the "EasyPay 2 Step" plan (the "Easy Pay Plan"), under which he was required to make "interest-only" payments for two years, after which time he would make monthly payments comprising principal and interest over the remainder of the twenty-five-year loan term. See id. ¶¶ 30, 31, 35, 37.

Plaintiff asserts that unbeknownst to him, rather than charging plaintiff the full amount of interest that accrued each month, Access set plaintiff's monthly payment amount lower than the amount of interest that actually accrued. See Compl. ¶¶ 43, 48-52, 63. According to the Complaint, this practice, known as "negative amortization," is prohibited under the terms of the Promissory Notes and the Easy Pay Plan.[1] See id. ¶¶ 53, 61-63, 65. The interest left unpaid each month was capitalized; as a result, and contrary to plaintiff's expectations based on the Promissory Notes and the application for enrollment in the Easy Pay Plan, plaintiff's loan

---

[1] In the factual background section of the Complaint, plaintiff states that the Higher Education Act of 1965 (the "HEA"), 20 U.S.C. § 1070 *et seq.*, does not permit negative amortization of FFELP loans. Compl. ¶ 39.

balance increased. See id. ¶¶ 48, 51-53, 62. Plaintiff asserts that, once he became aware that his loan balance was increasing despite timely monthly payments, he contacted both Access and ACS, to whom Access had transferred plaintiff's loans for servicing, and demanded an explanation. Id. ¶¶ 44-48, 50, 54-57. According to plaintiff, Access and ACS each refused to provide any explanation or otherwise address plaintiff's concerns. See id. ¶¶ 56, 58.

Plaintiff thereafter filed suit in Kings County Supreme Court, seeking, on behalf of himself and others similarly situated, compensatory damages, injunctive relief, reasonable attorneys' fees and costs, and prejudgment interest. See generally Compl.; id. *ad damnum* clause. Although service of the Complaint on Xerox through the Secretary of the State of New York was effected on October 19, 2012, see Affidavit of Service to Xerox, Declaration of Corey Stark (Dec. 14, 2012) ("Stark Decl.") Ex. 3, DE #12-3, the Amended Notice of Removal avers that Xerox did not receive the Complaint until October 31, 2012, and that XES received it from Xerox the following day. See Amended Notice of Removal at 2.

On November 28, 2012, Xerox and XES filed a Notice of Removal in the Eastern District of New York. See Notice of Removal. That Notice contains only the conclusory assertion that federal question jurisdiction exists under 28 U.S.C. § 1331 because "[p]laintiff's claims require resolution of significant issues of federal law"; the Notice of Removal is silent as to the dates of receipt of the Complaint. See generally Notice of Removal. Not satisfied that defendants had established either the existence of federal jurisdiction or the timeliness of removal, this Court ordered Xerox and XES to show cause why the case should not be remanded to state court. See Order to Show Cause (Nov. 29, 2012) ("11/29/12 Order"), DE #3. The 11/29/12 Order also addressed the Notice of Removal's perfunctory assertion that federal jurisdiction "may also lie

under 28 U.S.C. § 1332 because, *inter alia*, Xerox is not a proper party to this action[,]" Amended Notice of Removal at 1; the Court observed that, while the Notice of Removal fails to specify either the citizenship of each party to the action or the amount in controversy, the Complaint reflects that plaintiff and defendant Xerox are both citizens of New York. See 11/29/12 Order at n.1 (citing Compl. ¶¶ 1, 13).

In response, Xerox and XES filed an Amended Notice of Removal, which includes dates that Xerox contends the Complaint was received by those entities. See Amended Notice of Removal at 1. Without providing additional detail, the Amended Notice of Removal asserts that the determination of plaintiff's claims will "require resolution of significant issues" relating to the HEA, FFELP, and "other applicable federal laws and regulations," and that "under 28 U.S.C. § 1331 . . . jurisdiction in this Court lies accordingly." Amended Notice of Removal at 1. The Amended Notice of Removal additionally suggests that XES may be treated interchangeably with ACS, because XES has been sued "as [ACS]" in this lawsuit, see id., and that Xerox was "fraudulently joined" to defeat diversity jurisdiction. See id. at 2.

On December 6, 2012, Xerox and XES filed a memorandum of law in support of their Amended Notice of Removal, along with a declaration by Clay Scheitzach, Senior Vice President and Group Counsel of the company "Xerox Business Services, Inc." ("XBS"), which owns XES. See Memorandum of Law of [XES and Xerox] in Response to Order to Show Cause (Dec. 6, 2012) ("Def. Response"), DE #8; Declaration of Clay B. Scheitzach (Dec. 6, 2012) ("Scheitzach Decl."), DE #8-1. The arguments made by Xerox and XES rest on the assumption, also expressed in the Amended Notice of Removal, that XES and XBS may be substituted for ACS in

this lawsuit – at least for removal purposes[2] – because Xerox acquired ACS in 2010, "ultimately" renaming it XBS, which in turn wholly owns XES, "the entity that service[s] plaintiff's loan[s] pursuant to a contract between XES and [Access]." See Scheitzach Decl. ¶¶ 2-3, 6; Def. Response at 2 n.1.

Xerox and XES argue that removal was timely because Xerox received the Complaint on October 31, 2012, thirty days prior to the filing of the Amended Notice of Removal. See Def. Response at 2. Xerox and XES offer the declaration of Mr. Scheitzach as proof of the dates of receipt by the Xerox entities. See Scheitzach Decl. ¶ 4. In that declaration, Mr. Scheitzach states that he "understand[s]" that the office of the General Counsel of Xerox received the Complaint on October 31, 2012, and that XBS and XES received it the following day. See id.

With respect to the issue of federal question jurisdiction, Xerox and XES contend that plaintiff's state law claims "implicate" FFELP, the HEA, and "other" applicable federal laws and regulations. See Def. Response at 1, 4-5. They further argue that even though none of the federal statutes cited by them creates a private right of action, the federal issue raised by plaintiff's claims is nevertheless "substantial" because the regulatory scheme is "complicated," "nationwide in scope," and "of obvious public importance." See id. at 5-8; see also Defendants' Reply Letter (Dec. 21, 2012) ("Def. Reply") at 2, DE #17 (citing Broder v. Cablevision Systems Corp., 418 F.3d 187 (2d Cir. 2005)).

In a response filed on December 14, 2012, plaintiff requests that the case be remanded to state court, arguing that, under 28 U.S.C. § 1446, XBS and XES, as non-parties, lack standing to

---

[2] Neither XES nor XBS has sought to intervene in this lawsuit, nor has any party suggested that these companies be added to the Complaint.

remove the action or to support Xerox's notice of removal through the declaration of XBS's agent, Mr. Scheitzach. See Plaintiff's Memorandum in Opposition (Dec. 14, 2012) ("Pl. Opp.") at 2-3, 10, DE #11.[3] Furthermore, plaintiff contends, even if plaintiff's claims somehow implicate federal laws and policy governing the administration of federally funded student loans, this action, which includes only state law claims, does not involve a "substantial" question of federal law. See id. at 6-7. Noting that Congress has delegated administration of the FFELP to the several states, plaintiff additionally asserts that affording federal question jurisdiction over plaintiff's claims would supplant New York's "predominate interest" in retaining jurisdiction over the state causes of action.[4] See id. at 7-8.

## DISCUSSION

**I.     Removal Procedure and Timeliness**

In order for a civil action to be removed from state to federal court, it must be one "[over] which the district courts of the United States have original jurisdiction." See 28 U.S.C. § 1441(a). Who may remove a case is likewise limited; only "the defendant or the defendants" may seek removal. See id.; Deutsche Bank Nat'l Trust Co. v. Doe, No. 3:10-cv-1490 (CSH),

---

[3] Plaintiff also proffers several exhibits that tend to support plaintiff's contention that, contrary to Mr. Scheitzach's assertions that XES "was the entity that serviced Plaintiff's loan," and that XBS "is improperly sued herein as [ACS]," Scheitzach Decl. ¶¶ 3, 1, ACS continues to exist and to service plaintiff's loans. See generally Stark Decl. Ex. 5, DE #12-5.

[4] Plaintiff also argues that, under the "rule of unanimity," which requires that the written consent of all served defendants be filed with the court, Xerox has not met its burden of demonstrating Access's consent to removal. See Pl. Opp. at 3-5. Xerox correctly points out, however, that, pursuant to 28 U.S.C. § 1453(b), the rule of unanimity does not apply in class action lawsuits, see Def. Reply at 1-2; any named defendant may remove, and written consent of served parties need not be submitted to the court. See 28 U.S.C. § 1453(b); Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d Cir. 2006).

2010 WL 4683923, at *2-3 (D. Conn. Nov. 4, 2010) (holding that, even when a non-party claimed to be the real party in interest, he had no authority to notice removal, and thus "his removal of the action [was] fatally flawed") (collecting cases); Juliano v. Citigroup, 626 F.Supp.2d 317, 318-19 (E.D.N.Y. 2009) ("[A] non-party lacks standing to invoke a district court's removal jurisdiction . . . ."); Geiger v. Arctco Enters., Inc., 910 F.Supp. 130, 131 (S.D.N.Y. 1996) ("It is clear beyond peradventure of a doubt that the right of removal is vested exclusively in defendants."); JRA Holding, Inc. v. McCleary, No. CV 95 1948 (RJD), 1995 WL 405021 at *1 (E.D.N.Y. June 27, 1995) (individual who was not a defendant in state court action could not remove case to federal court), aff'd, No. 95-7702, 1996 WL 80692, at *1 (2d Cir. Feb. 20, 1996); see also 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3731 (4th ed. 2013). The text of 28 U.S.C. § 1446, which governs removal procedure, similarly makes clear that only a defendant (or defendants) may remove a civil action to federal court. See 28 U.S.C. § 1446(a) ("A defendant or defendants desiring to remove any civil action . . . shall file [a notice of removal] in the district court of the United States for the district and division within which such action is pending . . . ."). Furthermore, the notice of removal must be filed within thirty days of receipt of the complaint by the removing defendant. See 28 U.S.C. § 1446(b).

The defendant seeking to remove an action to federal court "bears the burden of proving facts to establish that jurisdiction." Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998); Perez v. Hornbeck Offshore Transp., LLC, No. 10 CV 1402(SJ)(MDG), 2011 WL 1636244, at *1 (E.D.N.Y. Apr. 28, 2011). Moreover, "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." Am. Standard, Inc. v. Oakfabco,

Inc., 498 F.Supp.2d 711, 715 (S.D.N.Y. 2007) (internal citation omitted); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Lupo v. Human Affs. Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994).

In this case, XES has not been named in the Complaint, nor otherwise added as a party. Additionally, XES has not sought to intervene formally in this lawsuit. Therefore, XES has no standing to remove the case from state to federal court.[5] Accordingly, whenever XES may have received the Complaint is irrelevant to the Court's timeliness analysis.

As for the removal by defendant Xerox, the evidence proffered by Xerox does not establish the timeliness of either of the two removal notices filed with the Court. Although Xerox's Amended Notice of Removal states in conclusory fashion the date that Xerox is alleged to have received the Complaint from the Secretary of State of New York (a date that Xerox had previously failed to provide in its original Notice of Removal), that assertion is not substantiated by competent evidence in Xerox's response to the Court's 11/29/12 Order. See Audi of Smithtown, Inc. v. Volkswagen of Am. Inc., No. 08-CV-1773 (JFB)(AKT), 2009 WL 385541, at *3 (E.D.N.Y. Feb. 11, 2009) (a removing defendant must "establish its right to a federal forum by competent proof") (collecting cases). Mr. Scheitzach, who is Senior Vice President and Group Counsel of non-party XBS, is not an officer or principal of Xerox, and his hearsay

---

[5] Even if, as Xerox and XES suggest, defendant ACS was acquired by Xerox and renamed XBS, see Scheitzach Decl. ¶ 2, that does not entitle a different entity, XES – which, Xerox and XES contend, was "formerly known as ACS Education Services, Inc.," a non-party, see id. – to remove this action from state court. Xerox and XES attempt to cloud the issue by conflating the identities of all entities and asserting that *XES* was "incorrectly sued as [ACS], which is now called [XBS] . . . ." Def. Reply at 1. The fact remains that *XBS*, which reportedly is the new name for defendant ACS, has not itself sought to remove the case on the ground that it was incorrectly sued as defendant ACS.

statement, based on information from an unidentified source, that the office of the General Counsel of Xerox received the Complaint from the Secretary of State on October 31, 2012, does not prove the date of receipt of the Complaint by Xerox. See also Fed. R. Evid. 401, 801, 802; Lee v. Illinois, 476 U.S. 530, 543 (1986) (when "hearsay evidence does not fall within a firmly rooted hearsay exception . . . [it] is thus presumptively unreliable . . . .") (citation omitted). Accordingly, Xerox has not carried its burden, under 28 U.S.C. § 1446(a), of establishing that either the Notice of Removal or the Amended Notice of Removal was timely filed.[6]

## II. Federal Question Jurisdiction

In addition to the evidentiary deficiency of Xerox's showing on the timeliness of removal, the Court concludes that Xerox has failed to demonstrate that 28 U.S.C. § 1331 affords federal jurisdiction over this case. Generally, "[t]he presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule[,]" pursuant to which federal jurisdiction "exists only when plaintiff's own cause of action is based on federal law, and only when plaintiff's well-pleaded complaint raises issues of federal law[.]" Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998) (internal citation omitted); see also Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003) ("To determine whether the claim arises under federal law, we examine the 'well pleaded'

---

[6] Xerox does not disclose the date that Access received the Complaint, although plaintiff provides that date -- October 25, 2012 -- in an affidavit of personal service on Access's registered agent for service of process. See Affidavit of Service, Stark Decl. Ex. 4, DE #12-4; see also Pl. Opp. at 4 n.1. That date predates Xerox's receipt of the Complaint. See id.; see generally 28 U.S.C. § 1446(b)(2)(B)-(C) (thirty-day statutory period runs from date the later-served defendant receives complaint). The remaining defendant, ACS, was served with the Complaint, through the Secretary of State, on October 19, 2012. See Stark Decl. Ex. 2, DE #12-2. Although Mr. Scheitzach avers that XBS, the new name for ACS, received the Complaint on November 1, 2012, see Scheitzach Decl. ¶ 4, XBS at no time filed a notice of removal.

allegations in the complaint and ignore potential defenses[.]").

Notwithstanding the well-pleaded complaint rule, and the absence of any federal claims, federal jurisdiction under 28 U.S.C. § 1331 may be sustained in limited circumstances where the state law claims implicate a significant federal issue or issues. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005); Broder, 418 F.3d at 194. However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1985). Rather, in order to provide the basis for federal "arising under" jurisdiction, the federal issue involved must be "substantial" and "actually disputed," see Broder, 418 F.3d at 194 (citing Grable, 545 U.S. at 314), *and* it must be possible for the federal forum to "entertain [the federal issue] without disturbing any congressionally approved balance of federal and state judicial responsibilities." Broder, 418 F.3d at 194.

In this case, Xerox argues that the determination of plaintiff's claims "will require resolution of significant issues concerning the [HEA, FFELP], and other applicable federal laws and regulations," and that the Grable standard is met where a "[p]laintiff has stated a federal issue concerning whether the [d]efendants' actions accord with the relevant federal statutes and regulations and the parties dispute that issue." Def. Response at 1, 6. However, while it is undisputed that the HEA and FFELP "provide the overarching [regulatory] framework" governing the servicing of federally funded student loans (including plaintiff's), see Pl. Opp. at 6, and while the administration of federally funded student loans may well be a matter of "obvious [national] public importance," Def. Response at 7, Xerox has failed to identify precisely which federal legal issue or issues are "necessarily raise[d]" and must be resolved in this litigation. See

Broder, 418 F.3d at 194, 195 (citing Grable, 545 U.S. at 314).

In arguing that plaintiff has "expressly premised at least one, if not all three," of his claims on violations of federal laws and regulations, Xerox ignores the language of plaintiff's Causes of Action and relies exclusively on those portions of the Complaint that set forth the factual background of the case. See Def. Response at 5, 6 (citing Compl. ¶¶ 10, 11, 16(b), 18-23, 39) (emphasis in original). Fairly read, however, the three Causes of Action in the Complaint assert violations of New York law only. See Compl., First Cause of Action for Breach of Contract ¶¶ 62, 65 (alleging that negative amortization "constitutes a breach of contract," inasmuch as "neither the Promissory Notes nor the Easy Pay Plan application authorize [defendants] to request a monthly interest-only payment in an amount less than the interest accruing" during the interval between scheduled payments); id., Second Cause of Action for Unjust Enrichment; id., Third Cause of Action for Deceptive and Misleading Business Practices ¶¶ 81-86 (application to enroll in Easy Pay Plan was misleading in describing calculation of borrowers' repayment schedules). The resolution of those claims will not require the evaluation or determination of any federal law or regulation, and nothing in Xerox's submissions establishes otherwise.[7]

---

[7] Contrary to Xerox's suggestion, Broder does not stand for the broad proposition that "[w]here state law claims for breach of contract, unjust enrichment and deceptive business practices implicate a complicated federal statutory and regulatory scheme, the 'substantiality' element of the second prong of the test is satisfied.'" Def. Response at 5; see Def. Reply at 2. Under the first prong of the three-part Grable analysis followed by Broder, it is the defendant's burden to demonstrate that the plaintiff's claims "necessarily raise a stated federal issue." Broder, 418 F.3d at 194, 195 (citing Grable, 545 U.S. at 314). In contrast to the instant case, the complaint in Broder asserted that the defendant cable provider's failure to provide the plaintiff with uniform rates mandated by federal statute *was* the breach of contract at issue, as well as the gravamen of
(continued...)

Indeed, under the theory espoused by Xerox, every debt-collection dispute involving a federally funded student loan would give rise to federal jurisdiction under Grable and Broder, and such cases could routinely be removed to federal court despite the absence of any federal claims. Not surprisingly, no judicial decision has embraced that view, which in fact is contrary to precedent rejecting similar arguments. See, e.g., HICA Educ. Loan Corp. v. Danziger, 900 F.Supp.2d 341, 343-44 (S.D.N.Y. 2012) (collecting cases and holding that, although default on loan made pursuant to federal education assistance loan program does violate a federal regulation, an action to recover on a promissory note securing such a loan does not require court to decide a substantial federal issue, and fact that commencement of action for default was part of federal insurance claims process was insufficient federal interest to "open the door" of "arising under" jurisdiction); Brooks v. Sallie Mae, Inc., Civ. Action No. 3:09–cv–1547 (SRU), 2009 WL 4038467, at *2 (D. Conn. Nov. 19, 2009) (remanding case to state court where plaintiff claimed that defendant Sallie Mae violated Connecticut Unfair Trade Practices Act by misapplying and misrepresenting the requirements necessary for obtaining an economic hardship deferment in connection with a student FFELP loan).

As noted in the Brooks case, the HEA creates no private cause of action for any violation that might arguably be implicated here, and the FFELP does not confer exclusive jurisdiction to federal courts. See Brooks, 2009 WL 4038467, at *2; 20 U.S.C. § 1071 *et seq.*; 20 U.S.C. §

---

[7](...continued)
other state law causes of action, thereby raising a substantial federal issue. See Broder, 418 F.3d at 193. In this case, however, plaintiff does not assert that defendants violated their contractual duties to plaintiff or any state law by failing to follow any provision of the HEA or any law or regulation enacted pursuant to the FFELP.

1082(a)(2); see also Bland v. Educ. Credit Mgmt. Corp., No. ELH-11-02812, 2012 WL 603194, at *5-6 (D. Md. Feb. 22, 2012) (remanding to state court fraud case brought by plaintiff alleged to have defaulted on FFELP student loan; holding that HEA does not create private cause of action and "this case is not one 'arising under' federal law for removal purposes").

Moreover, as plaintiff correctly observes, "Congress intended the [FFELP] program to be administered at the state and local levels by guaranty agencies . . . ." Pl. Opp. at 8 (citing Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1030 (9th Cir. 2009)). The assertion of federal jurisdiction in this case would thus "disburb[] [the] congressionally approved balance of federal and state judicial responsibilities" with respect to such loans. Grable, 545 U.S. at 314. State courts routinely consider and are competent to decide issues of federal law, particularly in this area. Therefore, the fact that a federal issue may conceivably arise in the course of this litigation is insufficient to sustain "arising under" jurisdiction; courts do not "treat[] 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." Id.; see also Brooks, 2009 WL 4038467, at *2. Accordingly, Xerox has failed to carry its burden of demonstrating that, pursuant to 28 U.S.C. § 1331, there is federal "arising under" jurisdiction over this action asserting only state law claims.

## III. Assertion of Diversity Jurisdiction

In an argument relegated to a footnote in its response to the Court's 11/29/12 Order, Xerox purports to "reserve all rights . . . to rais[e] jurisdiction under 28 U.S.C. § 1332 at the appropriate time." Def. Response at 2 n.2. The appropriate time to have justified retention of the case in federal court on the basis of diversity jurisdiction would have been in response to the Court's Order to Show Cause "why the case should not be remanded to state court." 11/29/12

Order at 2.  Assuming that the District Court rejects the defense arguments on arising-under jurisdiction, Xerox should not now be permitted a second bite at the jurisdictional apple.

Significantly, the original Notice of Removal did not clearly assert diversity jurisdiction as a basis for removal of the case from state court.  Compare Notice of Removal at 1 (asserting the XES and Xerox "hereby remove this case to the U.S. District Court for the Eastern District of New York on the grounds of federal question jurisdiction") with id. (noting that "subject matter jurisdiction in this Court *may* also lie under 28 U.S.C. § 1332 because, *inter alia*, Xerox is not a proper party to this action") (emphasis added).  The Court's 11/29/12 Order remarked upon the Notice's equivocal reference to diversity jurisdiction, noting the inadequacies therein.  See 11/29/12 Order at 1-2 n.1.  Nevertheless, the Amended Notice of Removal provides little in support of this jurisdictional afterthought, adding only, on information and belief, that Xerox was "fraudulently joined" and that the amount in controversy exceeds $75,000.  Amended Notice of Removal at 2.[8]  Significantly, the Amended Notice continues to equivocate on the existence of diversity jurisdiction – asserting only that jurisdiction "may" lie under 28 U.S.C. § 1332, not that removal was effected on that basis.  See Amended Notice of Removal at 2.  Equally telling is the fact that Xerox's memorandum of law in opposition to remand contains no substantive argument to sustain a finding of diversity jurisdiction, nor does its Reply, despite plaintiff's argument that diversity jurisdiction does not exist here.  See Pl. Opp. at 9; Def. Reply.

---

[8] Under 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).  Additionally, a district court may exercise jurisdiction over a class action lawsuit where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2).

Under these circumstances, Xerox should not be permitted to belatedly amend its Notices of Removal, and/or to proffer new evidence and argument, to support a theory of jurisdiction that was not clearly articulated either during the thirty-day period for removal or in response to a judicial order seeking justifications for why the case should not be remanded. Simply put, Xerox "made a strategic decision not to rely on [diversity] jurisdiction in its notice of removal and may not now claim that federal jurisdiction is premised on the same." Bernadin v. Am. Airlines, Inc., No. 08 CV 1774(NG)(VVP), 2009 WL 1910964, at *3 (E.D.N.Y. July 1, 2009) (defendant not permitted to untimely amend removal notice after initially stated grounds for removal found insufficient to support federal jurisdiction); see also Arancio v. Prudential Ins. Co. of Am., 247 F.Supp.2d 333, 337 (S.D.N.Y. 2002) (remanding to state court and rejecting defendant's attempt to "switch horses from federal question to diversity jurisdiction") (Lynch, J.); Funeral Fin. Sys., Ltd. v. Solex Express, Inc., No. 01-CV-6079(JG), 2002 WL 598530, at *6 (E.D.N.Y. Apr. 11, 2002) ("Now that [defendant's] thirty-day period to remove the action has long run, [defendant] is not entitled to amend the Notice [of Removal] to add this new avenue of jurisdiction."). Therefore, because removal statutes are to be strictly construed, see, e.g., Lupo, 28 F.3d at 274; Am. Standard, 498 F.Supp.2d at 715, Xerox should not now be allowed to supplement its submissions in support of diversity jurisdiction.[9]

---

[9] In any event, defendants' submissions to the Court do not substantiate diversity as a basis for federal jurisdiction in this case. The Complaint alleges, on information and belief, that since acquiring ACS in 2010, Xerox "controls the business operations of ACS[,]" which "operates as a division of Xerox" and markets itself as such. Compl. ¶¶ 13-14. Yet, Xerox and XES proffer no evidence to rebut these allegations and to establish a factual basis for their "fraudulent joinder" allegation. See Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998) (doctrine of fraudulent joinder requires showing, by clear and convincing evidence, either "outright fraud

(continued...)

## CONCLUSION

For the foregoing reasons, non-party XES has no standing to remove this action from state to federal court, and defendant Xerox has failed to carry its burden of demonstrating that its notice of removal was timely filed, or that, under 28 U.S.C. § 1331, federal question jurisdiction exists over plaintiff's claims. Furthermore, Xerox should be precluded from now advancing new theories in an effort to establish any other basis for federal jurisdiction. Therefore, the Court respectfully recommends that the District Court grant plaintiff's request to remand this case to New York State Supreme Court, Kings County.

Any objections to this Report and Recommendation must be filed with the Honorable Nicholas G. Garaufis by **June 24, 2013**. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is requested to docket this Report and Recommendation into the ECF system.

**SO ORDERED.**

**Dated:** Brooklyn, New York
June 7, 2013

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

---

[9](...continued)
committed in the plaintiff's pleadings," or that claim against nondiverse defendant is so flawed that it fails to state a cause of action); see also Ret. Program for Emps. of Fairfield v. NEPC, LLC, 642 F.Supp.2d 92, 97-98 (D. Conn. 2009) (removing party bears "heavy" burden of proving fraudulent joinder); Audi of Smithtown, 2009 WL 385541, at *3 (same).